IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

v.                                                    No. 1:08-cr-10123

ANDRES GARCIA-MORENO,
aka ROBERTO BARCALL-ANDRADE,
et al.,

        Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT
_____

On November 17, 2008, a federal grand jury indicted Defendant, Andres Garcia-Moreno, on one count of violating 8 U.S.C. § 1326(a) and (b). The Defendant moves to dismiss this indictment under Rule 12, Federal Rules of Civil Procedure, arguing that his prosecution is prohibited by the five-year statute of limitations and the Double Jeopardy Clause of the United States Constitution. Upon consideration of his submission and the response by the Government, the Court GRANTS the Defendant's motion and dismisses the indictment as time-barred by the statute of limitations.


FACTUAL BACKGROUND

Garcia-Moreno is a native citizen of Mexico. (Docket Entry ("D.E.") No. 23, Report of Investigation, at 1.) On July 13, 1999, he was arrested in Collin County, Texas for forgery and possession of a controlled substance, which resulted in a 180-day jail sentence for each charge. (Id. at 2.) On March 9, 2000, officials arrested him at the Paso Del Norte Port of Entry in El Paso, Texas

1

for using counterfeit immigration documents, 18 U.S.C. § 1001, and he was deported to Mexico through expedited removal.  (Id.)  Prior to departure, Garcia-Moreno signed a form advising  him that, for a period of five years from the date of his departure, he would be prohibited from "entering, attempting to enter, or being in the United States."  (D.E. 23, Notice to Alien form.)  On March 12, 2000, he was arrested after reentering the country through the border around El Paso.  (D.E. 23, Reinstatement Order.)  Officer Manuel Ibarbo, a border patrol agent, signed and had Garcia-Moreno execute a form entitled "Notice of Intent/Decision to Reinstate Prior Order," which stated that the Defendant was "removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and therefore subject to removal by reinstatement of the prior order."  (Id.)  On March 30, 2000, the United States District Court for the Western District of Texas convicted him of violating 8 U.S.C. § 1325(a)(1),[1] which criminalizes entering the United States at an unauthorized point, and sentenced him to three years unsupervised probation.  (D.E. 23, Report of Investigation, at 2.)  On the same day, the Immigration and Naturalization Service ("INS") issued a warrant of removal or deportation against him, but it apparently was not executed.  (D.E. 23, Warrant of Removal.)

The Defendant subsequently violated the terms of his probation and was sentenced to incarceration at the Reeves County Detention Center in Pecos, Texas.  On July 17, 2002, the INS filed an immigration detainer[2] with the detention center, which stated that an "[i]nvestigation has

---

[1]Defendant was not charged with violating 8 U.S.C. § 1326 at that time.

[2]Federal immigration authorities use detainers to "request that another law enforcement agency temporarily detain an alien 'in order to permit assumption of custody by the Department [of Homeland Security].'" United States v. Uribe-Rios, 558 F.3d 347, 350 n.1 (4th Cir. 2009) (quoting 8 C.F.R. § 287.7(d)) (alternations in original).

been initiated to determine whether [Garcia-Moreno] is subject to removal from the United States."

(D.E. 23, Detainer.)  The Defendant was transferred from Reeves County on July 19, 2002 to Collins

County, Texas, where he served a six month sentence for earlier state law convictions for forgery

and drug possession.  (D.E. 23, Mot. to Dismiss, at 4.)  He was released into the United States after

this sentence.  (Id.)  Garcia-Moreno claims that he has continuously remained in this country since

March 12, 2000.  (Id.)

On October 15, 2008, the Defendant was arrested by Tennessee law enforcement officers for

possession of marijuana with intent to sell or deliver, but these charges were later dismissed.  (D.E.

23, Report of Investigation, at 1.)  On November 6, 2008, Officer David Johnston, an Immigration

Enforcement Agent, interviewed him at the Haywood County Jail in Brownsville, Tennessee.  (Id.)

The Defendant admitted to being a citizen of Mexico without proper immigration documentation.

(Id.)  He initially provided the officer with an alias, but subsequent record checks revealed his true

identity and previous deportation on March 9, 2000.  (Id.)  The officer detained the Defendant,

suspecting that he was in violation of § 1326.  (Id. at 2.)

On November 17, 2008, a federal grand jury returned the following single-count indictment:

On or about November 6, 2008, in the Western District of Tennessee, the defendant,
[Garcia-Moreno,] an alien, entered and was found in the United States, after having
been deported and removed therefrom on or about March 9, 2000 at El Paso, Texas,
the said defendant having not obtained the express consent of the Attorney General
of the United States to reapply for admission into the United States, in violation of
Title 8, United States Code, Section 1326(a), (b).

(D.E. 1, Indictment.)  The Defendant now seeks to have this charge dismissed.

STANDARD OF REVIEW

Rule 12 permits pretrial consideration of any defense "the court can determine without a trial

3

of the general issue." Fed. R. Crim. P. 12(b)(2).  Generally, a motion to dismiss is "capable of

determination" prior to trial when the issues raised involve "questions of law instead of questions

of fact on the merits of criminal liability." United States v. Craft, 105 F.3d 1123, 1126 (6th Cir.

1997).  The Court may, however, "make preliminary findings of fact necessary to decide questions

of law presented by pretrial motions so long as the trial court's conclusions do not invade the

province of the ultimate factfinder." Id.


ANALYSIS

I.      Statute of Limitations

The Defendant has been accused of violating the following statute:

[A]ny alien who–

(1) has been denied admission, excluded, deported, or removed or has departed the
United States while an order of exclusion, deportation, or removal is outstanding,
and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A)
prior to his reembarkation at a place outside the United States or his application for
admission from foreign contiguous territory, the Attorney General has expressly
consented to such alien's reapplying for admission; or (B) with respect to an alien
previously denied admission and removed, unless such alien shall establish that he
was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326.  Several courts have determined that this statute articulates three separate offenses:

"(1) illegal re-entry, (2) attempted illegal re-entry, and (3) being found illegally in the United

States." United States v. Lennon, 372 F.3d 535, 537 (4th Cir. 2004) (citing United States v.

DiSantillo, 615 F.2d 128, 134 (3d Cir. 1980)).  The Government bases its case against Garcia-

Moreno on the "found in" portion of the statute.  The applicable statute of limitations for this crime

4

provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  18 U.S.C. § 3282.

The Defendant asserts that, for the purposes of § 1326, he was "found in" the United States by federal officers on March 12, 2000, which is evidenced by the "Notice of Intent/Decision to Reinstate Prior Order" signed by Officer Ibarbo.  He argues that, because the statute of limitations should be calculated from the day he was "found," the indictment issued on November 17, 2008 is time-barred.  In response to this argument, the Government avers that the criminal acts serving as the basis of the indictment concluded on November 6, 2008, when Officer Johnston found the Defendant in the Western District of Tennessee.  In order to address the parties' arguments, the Court must first ascertain what event triggers the running of the statute of limitations for § 1326.  No court in the Sixth Circuit has ever addressed this particular issue, and other circuits disagree as to the applicable rule of law.  As such, the Court will treat this as an issue of first impression.

The United States Supreme Court has outlined the following considerations for determinating how to calculate the statute of limitations for a particular crime:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.  Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

Toussie v. United States, 397 U.S. 112, 114, 25 L. Ed. 2d 156, 90 S. Ct. 858 (1970) (superceded by statute on other grounds).  Generally, courts should construe criminal limitations statues liberally in favor of repose.  Id. at 115 (quoting United States v. Habig, 390 U.S. 222, 227, 88 S. Ct. 926, 19

L. Ed. 2d 1055 (1968); United States v. Scharton, 285 U.S. 518, 522, 52 S. Ct. 416, 76 L. Ed. 917 (1932)).  The statute usually begins to run when a crime is "complete."  Id. (citing Pendergast v. United States, 317 U.S. 412, 418, 63 S. Ct. 268, 87 L. Ed. 368 (1943)).  Typically, "an offense is complete as soon as every element in the crime occurs."  Toussie, 397 U.S. at 124 (White, J., dissenting).

Ascertaining the elements of § 1326, several circuit courts have observed that a defendant is "found" when two things occur: "[1] his physical presence is discovered and noted by the immigration authorities, and [2] the knowledge of the illegality of his presence . . . can . . . be attributed to the immigration authorities."  United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996); see also United States v. Herrera-Ordones, 190 F.3d 504, 510 (7th Cir. 1999); United States v. Bencomo-Castillo, 176 F.3d 1300, 1303 (10th Cir. 1999); United States v. Diaz-Diaz, 135 F.3d 572, 577 (8th Cir. 1998); United States v. Asibor, 109 F.3d 1023, 1031-32 (5th Cir. 1997); United States v. Rivera-Ventura, 72 F.3d 277, 281-82 (2d Cir. 1995).  In short, the elements of the crime equate with federal agents'[3] knowledge of two things–that an alien is physically present in the country and has been deported previously.  Federal circuits are divided as to whether the second prong requires actual or simply constructive awareness of the defendant's illegal status.  The Fourth and Seventh Circuit require actual knowledge.  United States v. Uribe-Rios, 558 F.3d 347, 354 (4th Cir. 2009); United States v. Are, 498 F.3d 460, 466 (7th Cir. 2007).  The Second, Third, Fifth, Eighth, Tenth, and Eleventh Circuits hold that constructive

---

[3]Courts have uniformly found that violators must be "found" by federal officers, and the knowledge or actions of state officers will not be imputed.  See United States v. Uribe-Rios, 558 F.3d 347, 353 (4th Cir. 2009) (citing United States v. Clarke, 312 F.3d 1343, 1347 (11th Cir. 2002)).

knowledge is sufficient, which means that the statute of limitations begins to run on the date when federal officers knew or "with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of [the defendant's] presence." Rivera-Ventura, 72 F.3d at 281-82; accord United States v. Lennon, 372 F.3d 535, 541 (3d Cir. 2004); United States v. Clarke, 312 F.3d 1343, 1347-48 (11th Cir. 2002); Bencomo-Castillo, 176 F.3d at 1304; Santana-Castellano, 74 F.3d at 598; United States v. Gomez, 38 F.3d 1031, 1037 (8th Cir. 1994).

For the purpose of this motion, the Court need not determine whether the Sixth Circuit recognizes a constructive knowledge theory because Garcia-Moreno has presented evidence that, more than five years prior to the indictment, federal authorities had actual knowledge that he was an alien who was illegally in the country after previous deportation.  Specifically, a document signed by Officer Ibarbo on March 12, 2000 clearly identifies the Defendant as "an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal."  (D.E. 23, Reinstatement Order.)  Both the Defendant and the border patrol agent signed this document.  Because Garcia-Moren has established that federal officers had actual knowledge of his illegal status, this Court concludes that the Defendant was found, for the purposes of § 1326, on March 12, 2000.  Herrera-Ordones, 190 F.3d at 510.  The indictment, however, states that the Defendant was found on November 6, 2008.  The Government avers that this charge does not violate the limitations period because the "found in" portion of § 1326 sets out a continuing offense.  This argument raises the following legal question: If an alien was previously found in the United States in violation of § 1326, does the statute of limitations bar prosecution for this same person being found again, more than five years later, after continuously and voluntarily remaining in the country?  A related issue is whether § 1326 is a

continuing offense and, if so, at what point it ceases to continue.

To support its position, the Government cites to the Seventh Circuit case of United States v. Are. 498 F.3d at 464. In that case, Are was a Nigerian national who was deported from the United States in 1996 and then illegally reentered the country in September 1998. Id. at 462. He was arrested by Chicago police in 2003 for an unrelated offense and provided a false name. Id. The Department of Homeland Security later determined, from his fingerprints taken during this arrest, that Are was an illegal alien and arrested him. Id. After a grand jury indicted him on September 1, 2005 for violating § 1326, he moved to dismiss the indictment, arguing that the statute of limitations began to run in 1998 when he illegally entered the country because, pursuant to a constructive knowledge theory, federal agents acting with reasonable diligence should have discovered his illegal status at that time. Id. The district court agreed and dismissed the indictment, but the Seventh Circuit Court of Appeals reversed. Id. at 462-63. In rejecting Are's constructive knowledge argument, the court held that § 1326 was a continuing offense and "the date on which the immigration agency 'should have discovered' the alien is simply irrelevant." Id. at 466.

Unlike in Are, Garcia-Moreno's argument does not depend upon the viability of a constructive knowledge theory because he has shown that federal agents actually knew of his illegal presence as early as 2000. Despite this key difference, the Government suggests that the reasoning used in Are should instruct this Court's decision–particularly the statement that § 1326 is a continuing offense. It points to the portion of that opinion where the Seventh Circuit stated

that for purposes of liability and venue,[4] the "found in" crime does not occur "only

---

[4]While it considered these points in its analysis, the Are court's qualification that the statements were made in regard to issues of liability and venue–rather than the question of when the statute of limitations begins to run–indicates that it did not necessarily consider Lopez-Flores

8

> at the instant of its detection."  "The crime is being in the United States and is not limited to the instant at which a federal agent lays hands on the person and a light bulb in the agent's head illuminates the mental sign 'This guy's an illegal alien.'" Lopez-Flores held that the phrase "'found in' must have the force of 'present in' rather than 'discovered by the INS to be in.'"  Understood as a continuing offense, the date on which immigration authorities discover the violation "has no significance so far as culpability is concerned."

Id. at 464 (quoting United States v. Lopez-Flores, 275 F.3d 661, 663 (7th Cir. 2001)) (emphasis and footnote added).  After finding that § 1326 should be considered a continuing offense, however, it clarified that its ruling "held open the possibility that the date of actual discovery might have a bearing on the running of the statute of limitations."  Id. at 466 (citing Lopez-Flores, 275 F.3d at 663) (emphasis in original).

Other circuits have disagreed with the Seventh Circuit's reasoning.  See Immigration & Naturalization Serv. v. Lopez-Mendoza, 468 U.S. 1032, 1057, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984) (noting the different opinions among the circuits on this issue).  The Second, Third, and Fifth Circuits[5] have rejected the notion that § 1326 sets out an offense that continues after an alien has been initially found.  Santana-Castellano, 74 F.3d at 598; Rivera-Ventura, 72 F.3d at 282;

---

to be directly controlling as to the issue at hand.  Are, 498 F.3d at 464.

[5]The Second and Third Circuits explicitly stated that § 1326 is not a continuing offense. In Santana-Castellano, the Fifth Circuit articulated a position that may be considered either a middle ground or a clarification of the holdings in Rivera-Ventura and DiSantillo.  It stated that "[w]here a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is 'found' is a continuing offense." Santana-Castellano, 74 F.3d at 598 (emphasis added); see also United States v. Gunera, 479 F.3d 373, 376-77 (5th Cir. 2007) (recognizing that "the holding of Santana-Castellano continues to be the standard by which we determine whether an alien has been 'found in' the United States for purposes of the applicable five-year statute of limitations under 18 U.S.C. § 3282").  The practical effect of Santana-Castellano is essentially identical to the approaches taken in the First and Third Circuits, but it explains that § 1326 is actually a continuing offense from the point at which an illegal alien enters the country until he is "found," at which point the offense becomes "complete" and the statute of limitations begins to run.  Toussie, 397 U.S. at 115.

DiSantillo, 615 F.2d at 134.  The Eighth, Tenth, and Eleventh Circuits have not explicitly addressed this issue but have indicated that a defendant is "found" at the point federal agents have either actual or constructive knowledge of his illegal presence in the country.[6]  Clarke, 312 F.3d at 1347-48; Bencomo-Castillo, 176 F.3d at 1304; Gomez, 38 F.3d at1037; see also United States v. DeLeon, 444 F.3d 41, 52-53 (1st Cir. 2006) (holding, without adopting the constructive knowledge theory, that a defendant cannot rely on the statute of limitations where deception by the alien allowed him to avoid detection by federal authorities).  The Fourth Circuit agrees with the Seventh Circuit that § 1326 is an offense that continues so long as the alien is still in the country, and the Ninth Circuit has endorsed this position through dicta.  Uribe-Rios, 558 F.3d at 354; United States v. Rincon-Jimenez, 595 F.2d 1192, 1194 (9th Cir. 1979) (citing United States v. Bruno, 328 F. Supp. 815, 825 (W.D. Mo. 1971); United States v. Alvarado-Soto, 120 F. Supp. 848, 850 (S.D. Cal. 1954)). The Sixth Circuit has not ruled on this issue.[7]

As this Court attempts to ascertain whether Congress intended § 1326 to be an offense that continues after an alien is initially found, the most important consideration is the statutory

---

[6]While these circuits did not directly discuss the "continuing violation" theory, one might reasonably infer that they implicitly assumed it did not apply after an alien is "found" because they addressed whether constructive knowledge triggers the statute of limitations.  If § 1326 was considered a continuing offense by these courts, then the issue of whether federal agents "should have discovered" an alien's illegal status would be irrelevant.  Are, 498 F.3d at 466.

[7]In an unpublished opinion, a Sixth Circuit panel upheld a sentence under § 1326 where the trial court "discounted [the defendant's] law-abiding conduct over the past fifteen years because the offense of illegal reentry by a previously deported felon 'in essence is considered a continuing offense.'"  United States v. Basulto-Pulido, 309 Fed. App'x 945, 949 (6th Cir. Feb. 5, 2009).  Although, it did not specifically discuss this finding by the trial court, and the statute of limitations was not at issue before the appellate court. Id.

language–particularly the phrases "at any time" and "found in."[8]  See Toussie, 397 U.S. at 115 (cautioning that a crime should not be construed as a continuing offense "unless the explicit language of the substative criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one"); see also United States v. Greever, 134 F.3d 777, 780 (6th Cir. 1998) (noting that the five-year statute of limitations applies to a crime where "there is no indication otherwise within the substantive statute").  Most courts have held that being "found" is equivalent to being "discovered" by federal agents.  Gomez, 38 F.3d at 1036 (citing United States v. Canals-Jimenez, 943 F.2d 1284, 1287 (11th Cir. 1991); United States v. Whittaker, 999 F.2d 38, 41 (2d Cir. 1993); DiSantillo, 615 F.2d at 137; United States v. Meraz-Valeta, 26 F.3d 992, 997 (10th Cir. 1994)).  Alternatively, the Seventh Circuit has interpreted "found in" to be essentially the same as "present in" the country.  Are, 498 F.3d at 466.  This Court considers the former interpretation to be more accurate.  The word "found" is closer to a synonym of "discovered" than "present."[9]  Also, to discover or find someone entails two parties–in this context a federal agent and an illegal alien–but the condition of being present focuses on a unilateral action regardless of other persons.  See Rivera-Ventura, 72 F.3d at 282

---

[8]The starting point of this Court's interpretation will be the word "found," which is modified by "at any time."

[9]Webster's New Collegiate Dictionary defines "find" as "to come upon often accidentally" or "to come upon by searching or effort."  It defines "discover" as "to obtain sight or knowledge of for the first time."  Both words are actions taken by someone uncovering something, and, in most contexts, they could be used interchangeably as synonyms.  In contrast, the Dictionary defines "present" as "now existing or in progress," which is not necessarily related to coming upon something.  Also, in this usage, "present" is an adjective, whereas the other two words are verbs, though the statute utilizes "found" as a participle.  Finally, when considered in the specific context of § 1326, "present" only describes the alien, whereas "found" or "discovered" describes the alien in relation to actions by another party–i.e. a federal agent.

11

(observing that "[t]he offense of being 'found in' the United States . . . depends not only on the conduct of the alien but also on acts and knowledge of the federal authorities").  Substituting "found in" for "present in" would shift the focus from the actions of law enforcement to the those of the alien by inserting words that are not contained within the statute.  This semantical distinction weighs against the argument that Congress intended the offense to continue after the alien is initially "found" because a discovery usually occurs at a fixed point in time, as opposed to the state of being "present" which may be perpetual.  As the Second Circuit has noted, "Congress's use of the word 'found' suggests a focus on the time at which the authorities' location of the alien and their knowledge of the illegality of his presence converge, and that focus indicates that the offense is complete at the time of that convergence."  Id.

Next, in considering the effect of the phrase "at any time," the Court agrees that § 1326 should not be interpreted in such a way that renders these words mere surplusage.  See, e.g., Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326, 2331, 60 L. Ed. 2d 931 (1979) (noting that, in statutory construction, every word of the statute should be given effect if possible).  The Court, however, finds some ambiguity in this phrase because, in relation to the statute of limitations, Congress may have intended to impart one of two directives: (1) that the limitations period should run when an alien is found, regardless of when he illegally entered the country[10] or (2) that it should

---

[10]Considering the evolution of this federal offense makes this first interpretation particularly inferable.  The previous version of this crime only made it illegal to enter or attempt to enter the United States.  See United States v. Garcia, No. 6:08-cr-81-Orl-19GJK, 2008 U.S. Dist. LEXIS 63478, 2008 WL 2856753, at *13 (M.D. Fla. July 22, 2008) (quoting Act of March 4, 1929, ch. 690, § 1, Pub. L. 70-1018, 45 Stat. 1551, 1551).  It is reasonable to conclude that Congress added the modifying phrase "at any time" to clarify that the limitations period should not be calculated from the date of entry, as would have been the case under the previous law, but rather when the alien is found.

run anew every time an alien is found, regardless of whether he was previously discovered.  The Government advocates for the second interpretation, but the underlying policies of the criminal limitations statute lead this Court to conclude that the first interpretation is more accurate.  See Toussie, 397 U.S. at 115 (stating that criminal limitations statutes should be construed in favor of repose).  The second interpretation would basically render the five-year statute of limitation ineffectual with regard to § 1326,[11] and, while Congress has the power to eliminate the availability of repose for a crime, it must do so explicitly.[12]

After considering the statutory language, the Court holds that when an alien is "found" for the purposes of § 1326, meaning that federal agents become aware he is illegally in the country, the offense is "complete" and the limitations period begins to run.  Toussie, 397 U.S. at 115.  Unless the alien is deported again, to be "found" a second time does not restart the statute of limitations or

---

[11]Under the interpretation advocated by the United States, the limitations period would apply in improbable scenarios, such as where a previously-deported alien is illegally found in the country, leaves, remains outside the country for five years, and then is extradited back into the United States for prosecution under § 1326.

[12]The Rivera-Ventura court made the following observation about how Congress could have been clearer if it actually sought to eliminate the limitations period for this crime:

> If Congress had meant that the unlawfully returned alien could be prosecuted at any time that he could be located in the United States, it could have accomplished this with clarity either by stating expressly that being "found" is to be deemed a continuing offense, see, e.g., 18 U.S.C. § 3284 (1994) (concealment of bankrupt's assets "shall be deemed to be a continuing offense" until date of final bankruptcy discharge); or by, instead of the phrase "is at any time found in," using a phrase such as "remains in," see, e.g., United States v. Cores, 356 U.S. at 408 & n.6; or by simply omitting the word "found" from § 1326(a).  We think it more likely that the "found in" clause was included to make it clear that if an alien illegally reenters the United States after deportation, he is subject to prosecution even if the government does not discover him or the illegality of his entry until after the time to prosecute him for illegal entry has expired.

Rivera-Ventura, 72 F.3d at 282.

constitute a separate offense.

Essentially, the Court believes that the Sixth Circuit would apply the criminal limitations statute to § 1326 in the same way as the Fifth Circuit.  For example, in United States v. Gunera, 479 F.3d 373, 375 (5th Cir. 2007), a defendant was convicted of drug possession and deported in 1991 and again in 1992.  In 1999, he applied with the Texas Service Center for Temporary Protected Status and provided "his true name, date of birth, and place of birth, all of which had been known to the INS at the time of his 1991 deportation," as well as his current Texas address.  Id.  On October 1, 1999, the INS denied Gunera's application because of the prior conviction.  Id.  More than five years later, he was arrested and indicted on December 20, 2004 for violating § 1326.  Id.  The Fifth Circuit held that, because the immigration authorities had actual knowledge of Gunera's illegal status more than five years prior, the indictment was barred by the statute of limitations.  Id. at 376-77 (quoting Santana-Castellano, 74 F.3d at 598); see also United States v. Flores-Leal, 134 Fed. App'x 691, 692 (5th Cir. 2005).

Like the defendant in Gunera, federal officers had actual knowledge of Garcia-Moreno's illegal presence in the United States more than five years prior to the indictment at issue.  Despite the fact that the indictment asserts he was "found" on November 6, 2008, the "Notice of Intent/Decision to Reinstate Prior Order" establishes that the statute of limitations should be calculated from March 12, 2000, and prosecution of the Defendant under § 1326 is time-barred.

II.   Tolling

The Government argues that, even if the statute of limitations was triggered earlier, it should be tolled.  The applicable statute provides that "[n]o statute of limitations shall extend to any person fleeing from justice."  18 U.S.C. § 3290.  The Supreme Court has held that, in order for a person to

be considered fleeing from justice,

> it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate. It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun.

Streep v. United States, 160 U.S. 128, 133, 16 S. Ct. 244, 40 L. Ed. 365 (1895).  More recently, the Sixth Circuit held that, in order to toll the limitations period, the Government must show that a defendant "concealed himself with the intent to avoid prosecution."  Greever, 134 F.3d at 780.  Thus, the two elements are concealment and intent.  The requisite intent may be inferred from "the defendant's knowledge that he was wanted and his subsequent failure to submit to an arrest."  Id.  A defendant may be considered to be "fleeing from justice" regardless of whether he leaves the jurisdiction in which he is being pursued because "in modern and heavily populated districts it is almost as easy to avoid arrest or prosecution by concealing oneself within the district as by fleeing the district."  Id. (quoting United States v. Wazney, 529 F.2d 1287, 1289 (9th Cir. 1976)).  The Government need not necessarily establish that "law enforcement officers made reasonable efforts to locate" a defendant, though this is a relevant factor in ascertaining the defendant's intent.  Id. at 780 n.1.  The Government bears the burden of proving by a preponderance of the evidence that a defendant concealed himself with the intent to avoid prosecution.  Id. at 781.

The United States argues that the following circumstances establish that the Defendant was "fleeing from justice": (1) his criminal history, as compiled by the National Crime Information Center, indicates that he has used aliases in the past; (2) he failed to surrender himself; and (3) he left the jurisdiction where the charges would have been filed.  First, the Government has presented

no evidence to establish the purported aliases used by the Defendant,[13] and there is no indication that, even assuming this allegation to be true, these anonyms somehow hindered or were intended to hinder his prosecution under § 1326.  In fact, the Defendant was incarcerated in federal prison for six months without the guise of a fictitious identity, and he was actually convicted of a related immigration offense on March 30, 2000.  Under these circumstances, the mere fact that he used aliases at some point in the past is insufficient to establish that he had done so to avoid conviction under § 1326 in this instance.  Second, considering that the Defendant was in the custody of federal officers who knew that he was a previously-deported alien on March 12, 2000, it is unclear what other steps he could have taken to "surrender" himself at this point–apart from contacting the United States Attorney's Office and specifically requesting that he be prosecuted for violating § 1326.  This Court does not agree that simply failing to self-report violations of the law constitutes "fleeing from justice."  Greever, 134 F.3d at 780.  Further, the Government has not established that, subsequent to his release, the Defendant had reason to know "that he was wanted" for the crime at issue.  Id.  Although the district director of the INS in El Paso signed a "Warrant of Removal/Deportation" on March 30, 2000 and an "Immigration Detainer–Notice of Action" was sent to the warden of the Reeves County Detention Center on July 17, 2002, the Government has submitted no evidence showing that the Defendant knew about either of these documents or that he had any other notice of further prosecution in Texas.  Thus, the Court finds insufficient evidence to conclude that the Defendant acted with the requisite intent.  Third and finally, the Government has not proven that the

---

[13]The report prepared by Officer Johnson, which has been submitted by the Defendant, indicates that Garcia-Moreno initially provided him with an alias, but his true identity was quickly discovered after a record check.  (D.E. 23, Report of Investigation, at 1.)  This incident occurred on November 6, 2008, which was after the statute of limitations had run.

16

Defendant left the Western District of Texas "with the intent to avoid prosecution" for the offense at issue. Id.; see also Rivera-Ventura, 72 F.3d at 283 (noting that "a person's departure from the jurisdiction [does] not constitute 'fleeing' within the meaning of § 3290 unless his intent in departing was to avoid arrest or prosecution"). This Court will not speculate as to the motivations underlying the Defendant's trip to Tennessee, but nothing indicates that he was driven by a desire to avoid conviction under § 1326.

For these reasons, the Court finds that the Government has not met its burden of establishing that tolling the statute of limitations would be appropriate.

III.   Double Jeopardy

Alternatively, the Defendant argues that, because of his previous conviction under § 1325(a) for entering the country illegally,[14] the indictment against him for violating § 1326 is unconstitutional under the Fifth Amendment. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V. This clause has been interpreted to prohibit multiple prosecutions and multiple punishments for the same crime. See, e.g., United States v. Dixon, 509 U.S. 688, 695-96, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993). In order to determine whether multiple prosecutions for two offenses is permissible under the Double Jeopardy Clause, the Supreme Court has formulated a "same-elements" test. Id. at 696 (citing Brown v. Ohio, 432 U.S. 161, 168-169, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977); Blockburger v. United States, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180

---

[14]The Government asserts that there is no double jeopardy issue because the Defendant's previous conviction pertained to his entry on March 9, rather than March 12. Because neither party has submitted documentation establishing these facts, however, the Court cannot ascertain which illegal entry underlies the Defendant's previous conviction.

(1932); <u>Gavieres v. United States</u>, 220 U.S. 338, 342, 55 L. Ed. 489, 31 S. Ct. 421 (1911)).  This test involves determining "whether each offense contains an element not in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."  <u>Id.</u> This analysis focuses on the statutory elements of the crimes, rather than the conduct of a particular defendant.  <u>Id.</u> at 703-04.

> The offense proscribed in § 1325 is as follows:
>
> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under title 18, United States Code, or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under title 18, United States Code, or imprisoned not more than 2 years, or both.

The statutory language in § 1326 is quoted <u>supra</u> in section I of this opinion.  Upon comparing these statutes, § 1326 clearly requires an element not contained in § 1325–namely that the defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding."  § 1326.  Upon inverting the analysis, the Court concludes that § 1325 likewise has an element that § 1326 does not.  To prove a violation of § 1326, the Government need not establish how an alien entered the country; it is sufficient that he was "found in" the country after having been previously deported.  <u>Cf.</u> <u>United States v. Ortiz-Villegas</u>, 49 F.3d 1435, 1437 (9th Cir. 1995) (stating that "plain language of the statute does not suggest that surreptitious entry is a prerequisite to prosecution for being 'found in' the United States").  To the contrary, under § 1325, the Government must prove as part of its prima facie case that the alien gained entry to the country in one of the three specific ways listed in the statute.  Because each statutory offense requires proof of a fact that the other does not, successive

prosecutions under § 1325 and § 1326 do not offend double jeopardy.  In <u>United States v.</u> <u>Flores-Peraza</u>, 58 F.3d 164, 167-68 (5th Cir. 1995), the Fifth Circuit reached the same conclusion on this exact same issue, and this Court is not aware of any court that has held otherwise.


CONCLUSION

For the reasons articulated herein, the Court **GRANTS** the Defendant's motion to dismiss the indictment on the ground that it was issued outside the limitations period but rejects the argument that it constitutes double jeopardy.

IT IS SO ORDERED this 3rd day of June, 2009.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE